UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN J. ROHDE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 2:23-CV-05047 |
| | ) |
| UNITARIAN UNIVERSALIST ASSOCIATION, | ) |
| UNITARIAN SERVICE PENSION SOCIETY, | ) |
| and SARAH LAMMERT, | ) |
| | ) |
| Defendants. | ) |

**NOTICE OF REMOVAL OF ACTION UNDER**
**28 U.S.C. § 1441(b) (DIVERSITY OF CITIZENSHIP)**

Pursuant to 28 U.S.C. §1331, § 1441(b), and §1446(b), Defendants Unitarian

Universalist Association ("UUA"), Unitarian Service Pension Society ("USPS"), and Sarah

Lammert ("Lammert"), hereby remove to this Court the state court action described below.

1.       Plaintiff commenced this action on or about November 16, 2023 by filing a

Complaint and Jury Demand ("Complaint") in the Court of Common Pleas of Chester County,

Pennsylvania, entitled *Kathryn J. Rohde v. Unitarian Universalist Association,* et al., Civil Case

No. 2023-09054-TT, naming UUA, USPS and Lammert as Defendants ("State Court Action").

2.       Defendants UUA and USPS were served with the Complaint on November 21,

2023. On December 13, 2023, undersigned counsel agreed to accept service of the Complaint on

Defendant Lammert. The State Court Action is now pending in the Court of Common Pleas for

Chester County. Copies of the Complaint and other Court of Common Pleas documents served

on Defendants are attached hereto as Exhibit A.

3.     This Notice of Removal is being filed within thirty days of service of the Complaint, as required by 28 U.S.C. § 1446(b).

4.     The State Court Action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Defendants under 28 U.S.C. § 1446 in that there is complete diversity of citizenship and the amount in controversy exceeds the jurisdictional threshold of $75,000.

5.     With respect to diversity of citizenship:

   a.     Plaintiff is a citizen of Pennsylvania. *See* Complaint at ¶ 11.

   b.     Defendant UUA is the central, religious organization of the Unitarian Universalist religious movement in the United States and is headquartered in Boston, Massachusetts. *See* Complaint at ¶ 12.

   c.     Defendant USPS is a non-profit Section 501(c)(3) organization with a principal place of business in Quincy, Massachusetts. *See* Complaint at ¶ 13.

   d.     Defendant Lammert is a citizen of Vermont. *See* Complaint at ¶ 14 (incorrectly alleging – "[u]pon information and belief" – that Lammert is a citizen of Milton, Massachusetts).

6.     Furthermore, the amount in controversy in this matter exceeds $75,000 because Plaintiff seeks expansive relief from Defendants in the form of "financial harm and reputational and emotional damages" (Complaint at ¶ 168), based on separate causes of action for defamation (Count 1), invasion of privacy (Count 2), breach of contract (Counts 3 and 4), promissory estoppel (Count 5) and tortious interference with contract (Count 6). *See* Complaint at ¶¶ 170-216. Indeed, while not specifying an amount, Plaintiff alleges that her "damages, including general and special damages" exceed the $50,000 jurisdictional amount for avoiding automatic

arbitration under Court of Common Pleas Local Rule 1301.1. *See* Complaint at "Request for Relief." Therefore, the amount in controversy in this matter easily exceeds $75,000.

7.  This Notice of Removal is being filed in the District of Eastern Pennsylvania, the district court of the United States for the district within which the State Court Action is pending, as required by 28 U.S.C. §§ 1446(a) and 1441(a).

8.  Upon filing of this Notice of Removal, Defendants shall give written notice thereof to Plaintiff, and shall file a certified copy of this Notice of Removal with the Clerk of the Court of Common Pleas of Chester County.

9.  By filing this Notice of Removal, Defendants do not waive any defenses available to them, jurisdictional or otherwise.

WHEREFORE, Defendants Unitarian Universalist Association, Unitarian Service Pension Society and Sarah Lammert respectfully request that this action proceed in this Court as an action properly removed.

Respectfully submitted,

UNITARIAN UNIVERSALIST ASSOCIATION,
UNITARIAN SERVICE PENSION SOCIETY and
SARAH LAMMERT,

By their attorneys,

/s/ Chelsey R. List
Chelsey R. List (331455)
Locke Lord LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
Telephone: 212-415-8600
Facsimile: 212-303-2754
Email: Chelsey.List@lockelord.com

Kay H. Hodge (*motion pro hac vice to follow*)
khodge@scmllp.com
John M. Simon (*motion pro hac vice to follow*)
jsimon@scmllp.com
Stoneman Chandler & Miller, LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Dated: December 20, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December, 2023, I caused copies of the foregoing Notice of Removal to be served on counsel for Plaintiff by electronic mail and first class mail at the following email and mailbox addresses:

Samantha K. Harris, Esq.
Allen Harris, PLLC
P.O. Box 673
Narberth, PA 19072
sharris@allenharrislaw.com

/s/ Chelsey R. List
Chelsey R. List (331455)
Locke Lord LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
Telephone: 212-415-8600
Facsimile: 212-303-2754
Email: Chelsey.List@lockelord.com

**EXHIBIT A**

2023-09054-TT
_____
Docket Number

vs.

# IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY

## NOTICE TO DEFEND

You have been sued in Court If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THESE PAPERS TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
Chester County Bar Association
15 West Gay Street
West Chester, PA. 19381
(610) 429-1500

**Supreme Court of Pennsylvania**

**Court of Common Pleas**

**Civil Cover Sheet**

<u>CHESTER</u>   County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | |
| **2023-09054-TT** | |

*Filed and Attested by PROTHONOTARY 16 Nov 2023 10:05 AM M. SCHIAVONI*

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N A**

**Commencement of Action**

- ✔ Complaint  Writ of Summons  Petition
-  Transfer from Another Jurisdiction  Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| **KATHRYN J ROHDE** | **UNITARIAN UNIVERSALIST ASSOCIATION** |

| Are money damages requested? ✔ Yes  No | Dollar Amount Requested:  Within arbitration limits |
|---|---|
| | (check one) ✔ outside arbitration limits |

| Is this a Class Action Suit?  Yes ✔ No | Is this an MDJ Appeal?  Yes ✔ No |
|---|---|

Name of Plaintiff/Appellant's Attorney: Samantha K Harris

  Check here if you have no attorney(are a Self-Represented [Pro Se] Litigant)

**S E C T I O N B**

| **Nature of the Case:** | Place "X" to the left of the <u>ONE</u> case category that most accurately describes your *PRIMARY CASE*. |
|---|---|
| | If you are making more than one type of claim, check the one that you consider most important. |

**TORT***(do not include Mass Tort)*
- ✔ Intentional
-  Malicious Prosecution
-  Motor Vehicle
-  Nuisance
-  Premises Liability
-  Product Liability*(does not include mass tort)*
-  Slander/Libel/Defamation
-  Other:

**CONTRACT***(do not include Judgments)*
-  Buyer Plaintiff
-  Debt Collection: Credit Card
-  Debt Collection: Other
-  Employment Dispute: Discrimination
-  Employment Dispute: Other
-  Other

**CIVIL APPEALS**

Administrative Agencies
-  Board of Assessment
-  Board of Elections
-  Dept. of Transportation
-  Statutory Appeal: Other
-  Zoning Board
-  Other:

**MASS TORT**
-  Asbestos
-  Tobacco
-  Toxic Tort - DES
-  Toxic Tort - Implant
-  Toxic Waste
-  Other:

**PROFESSIONAL LIABILITY**
-  Dental
-  Legal
-  Medical
-  Other Professional

**REAL PROPERTY**
-  Ejectment
-  Eminent Domain/Condemnation
-  Ground Rent
-  Landlord/Tenant Dispute
-  Mortgage Foreclosure: Residential
-  Mortgage Foreclosure: Commercial
-  Partition
-  Quiet Title
-  Other:

**MISCELLANEOUS**
-  Common Law/Statutory Arbitration
-  Declaratory Judgement
-  Mandamus
-  Non-Domestic Relations
-  Restraining Order
-  Quo Warranto
-  Replevin
-  Other:

*2023-09054-TT*

**Chester County**
**Court of Common Pleas**
**Cover Sheet**

| Docket No: | |
|---|---|
| | **2023-09054-TT** |

| Plaintiff(s): (Name, Address) | Plaintiff's/Appellant's Attorney(circle one) |
|---|---|
| **KATHRYN J ROHDE** | (Name, firm, address, telephone and attorney ID#) |
| 116 NEWLIN POINTE   GLEN MILLS, PA  19342 | **Samantha K Harris** |
| | 610-634-8258 ALLEN HARRIS PLLC attorney ID#: 090268 |
| | PO Box 673, Narberth, PA 19072, US |

| Defendant(s): (Name, Address) | Are there any related cases? Please provide case nos. |
|---|---|
| **UNITARIAN UNIVERSALIST ASSOCIATION** | |
| 24 FARNSWORTH STREET   BOSTON, MA  02210 | |
| **UNITARIAN SERVICE PENSION SOCIETY** | |
| 43 MERRYMOUNT ROAD UNIT 11  QUINCY, MA  02169 | |
| **SARAH LAMMERT** | |
| 460 BROOK ROAD   MILTON, MA  02186 | |

**Defendants who are proceeding without counsel are strongly urged to file with the Prothonotary a written statement of an address AND a telephone number at which they can be reached**

**Commencement of Action (if applicable):** __ Agreement for an Amicable Action __ Motion to Confirm Arbitration Award Notice of Appeal

If this is an appeal from a Magisterial District Judgement, was appellant __ Plaintiff or __ Defendant in the original action?

Jury Trial Demanded ✔ Yes __ No

Nature of case if not on previous cover sheet - Please choose the most applicable

| | |
|---|---|
| __ Annulment | __ Writ of Certiorari |
| __ Custody - Conciliation Required | __ Injunctive Relief |
| __ Custody - Foreign Order | __ Mechanics Lien Claim |
| __ Custody - No Conciliation Required | __ Issuance of Foreign Subpoena |
| __ Divorce - Ancillary Relief Request | __ Name Change |
| __ Divorce - No Ancillary Relief Requested | __ Petition for Structured Settlement |
| __ Foreign Divorce | |
| __ Foreign Protection from Abuse | |
| __ Paternity | |
| __ Protection from Abuse | |
| __ Standby Guardianship | |

| **Arbitration Cases Only** | **Notice of Trial Listing Date** |
|---|---|
| Arbitration Date    mm/dd/yyyy | Pursuant to C.C.R.C.P. 249.3, if this case is not subject to compulsory arbitration it will be presumed ready for trial twelve (12) months from the date of the initiation of the suit and will be placed on the trial list one (1) year from the date the suit was filled unless otherwise ordered by the Court. |
| Arbitration Time    hh:mm:ss | |
| Defendants are cautioned that the scheduling of an arbitration date does not alter the duty of the defendant to respond to the complaint and does not prevent summary disposition form occurring prior to the arbitration date. | |

| | |
|---|---|
| This matter will be heard by a Board of Arbitrators at the time and date specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial *de novo* on appeal from a decision entered by a judge. | To obtain relief from automatic trial listing a party must proceed pursuant to C.C.R.C.P. 249.3(b), request an administrative conference and obtain a court order deferring the placement of the case on the trial list until a later date. |

**File with:** Chester County Justice Center, Prothonotary Office, 201 W. Market St., Ste. 1425, PO Box 2746, West Chester, PA 19380-0989

These cover sheets must be served upon all other parties to the action immediately after filing.

Submit enough copies for service.

*2023-09054-TT*



IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA

KATHRYN J. ROHDE,

          PLAINTIFF,

      vs.

UNITARIAN UNIVERSALIST
ASSOCIATION, UNITARIAN
SERVICE PENSION SOCIETY, AND
SARAH LAMMERT,

          DEFENDANTS.

Civil Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY DEMAND

Plaintiff, Kathryn J. Rohde, through her undersigned attorneys, hereby states as follows:

## INTRODUCTION

1.      Religious institutions cannot hide behind the mantle of the First Amendment's protections while they recklessly disseminate falsehoods and purposely destroy an individual's reputation and livelihood. Yet this is precisely what Defendants in this case have done.

2.      Plaintiff the Rev. Dr. Kathryn J. Rohde was a trailblazing female Unitarian Universalist ("UU") minister. Her early years in UU ministry were not easy, as there were no guidelines on sexual misconduct by ministers. As one of the first female UU ministers, Plaintiff was both the victim of sexual harassment by male colleagues, as well as a counselor and advocate for those healing from sexual abuse within the UU community.

3.      Rev. Rohde devoted decades of her life to faithfully serving her congregants, especially women and the disabled, and upholding enlightenment liberal values that are the cornerstone of Unitarian Universalism.

1

4.      She retired from ministry in 2014, but over six years later, she found herself under a highly politicized attack by the Unitarian Universalist Association ("UUA").

5.      A radical new wave of woke political activists were influencing the UUA to silence or "cancel" ministers who advocated for the UUA's core principles of free speech, free thought, and open discourse.

6.      In direct contradiction to these stated core principles of the UUA, the UUA caved to the woke mob and instituted a disciplinary process against the elderly, disabled, retired Rohde for social media posts expressing just the sort of opinions that the UUA bylaws expressly claim to protect.

7.      Then, in bad faith, the UUA violated its own procedures, sacrificed its own promises of fairness and due process to the woke mob, and stripped the retired Rohde of her credentials as a minister as well as her past-earned retirement stipend for her 30-plus years of service to the UUA community.  To this day, the UUA refuses to identify any specific policies that Rohde actually violated.

8.      Nor has the UUA explained its unprecedented and vindictive actions in stripping a retired minister from her ministerial credentials, not for impacting any UUA affiliated churches, but because her statements in a 1200-person Facebook group offended three women who were lurking in that group and took offense at retired Rohde's opinions.

9.      Then, as if this wasn't enough, Defendants recklessly and maliciously defamed Rohde in a mass email.

10.     Plaintiff the Rev. Dr. Kathryn J. Rohde sues for defamation and breach of contract to recover from Defendants, who defamed her and breached their contract with her.

## PARTIES

11.     Plaintiff Kathryn Rohde, at all times relevant to this Complaint, has been a resident of Pennsylvania, and currently resides at 116 Newlin Pointe, Glen Mills, PA 19342.

12.     Defendant Unitarian Universalist Association ("UUA") enacts, imposes, operates, and maintains policies and operations at UU Churches throughout the country and in Chester County, Pennsylvania, where Plaintiff served until Defendant UUA stripped her of her ministry. Defendant has its principal place of business at 24 Farnsworth Street, Boston, Massachusetts, 02210.

13.     Defendant Unitarian Service Pension Society ("USPS") is a non-profit organization responsible for holding trust funds that provide service gratuities to Unitarian Universalist ministers who have reached the age of 66 and have served at least 20 years in Unitarian Universalist ministries. The USPS's place of business is located at 43 Merrymount Road, Unit 11, Quincy, Massachusetts, 02169.

14.     Defendant Sarah Lammert is the Executive Secretary for the Ministerial Fellowship Committee and Co-Director for the Ministries and Faith Development at the UUA.  She wrote and broadly disseminated defamatory statements about Plaintiff, including sending these statements to the Unitarian Congregation of West Chester, in West Chester, Pennsylvania, where Plaintiff served as an emeritus minister.  Upon information and belief, Defendant Lammert is a resident of Milton, Massachusetts.

## JURISDICTION AND VENUE

15.     This court has jurisdiction because Plaintiff's cause of action arises under Pennsylvania defamation and contract law and Defendants had sufficient minimum contacts with Pennsylvania, including entering into a contractual relationship with Plaintiff for her services as a minister in Pennsylvania.  In addition, a substantial part of the acts and omissions giving rise to Plaintiff's claims were expressly aimed at this forum and are therefore within the jurisdiction of this

Court. See *Gorman v. Shpetrik*, 2022 U.S. Dist. LEXIS 42389 *6 (E.D. Pa. Mar. 10, 2022) ("[S]end[ing] defamatory materials to individuals in Pennsylvania, knowing that Plaintiff would suffer harm in Pennsylvania" shows the conduct is "expressly aimed" at Pennsylvania.)

16.     Venue is proper in the Chester County Court of Common Pleas because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred within Chester County.

## STATEMENT OF MATERIAL FACTS

17.     Plaintiff the Rev. Dr. Kathryn ("Kate") Rohde is a retired Unitarian Universalist ("UU") minister credentialed through the Unitarian Universalist Association ("UUA").

18.     Until the UUA removed her ministerial credentials and defamed her, Rohde was an emeritus minister at the Unitarian Congregation of West Chester, in West Chester, Pennsylvania, where she had served the congregation faithfully for 17 years.

19.     Rohde entered the seminary in 1976 as one of the early waves of women in UU ministry.  She began service as a UU minister in 1980.

20.     Before ministry, she worked with abused and neglected children. This work informed her early activism in the UU Church as one of a small group of ministers to raise the issue of rampant sexual misconduct, abuse, and even rape of parishioners by clergy and staff.

21.     It took over six years of Rohde's advocacy for the UUA to adopt any formal statements regarding the inappropriateness of sexual misconduct and abuse.

22.     Rohde's early activism in support of victims of sexual abuse was one of many causes she has supported over the years.  She has also been active in the areas of racial justice, feminism, gay rights, poverty, education, and immigration. She has been awarded multiple prizes for her work, including the Skinner Prize and the Interweaver Prize.

23.     Perhaps most importantly, she has helped thousands of people over the course of her 40-year career within the UU Church.

24.     Defendant UUA is the organizational body responsible for the credentialing of clergy and filling open clergy positions at UU churches, among other roles.

25.     While each UU Church retains autonomy to select its own ministers, the UUA's bylaws provide that the UUA "has the exclusive right to admit ministers to ministerial fellowship with the Association." (§11.1).

26.     One of the UUA's committees, the Ministerial Fellowship Committee (MFC), is responsible for credentialing those who wish to serve as UU clergy as well as adjudicating complaints against ministers in Fellowship with the UUA.

27.     Approval of clergy is a three-year process with the MFC, with yearly renewal required during those three years.  After three years, clergy are permanently credentialed. Pursuant to the UUA's bylaws, credentialed ministers are subject to termination only for "unbecoming conduct, incompetence, or other specified cause," and only after notice and opportunity to be heard. (§11.5)

28.     Rohde was permanently credentialed as a UU minister in 1980 and served as a UU minister at various UU congregations until her retirement in 2014.

29.     Rohde's ministry always reflected a deep commitment to the values of freedom of belief and expression guaranteed by the UUA.

30.     Unlike other religious organizations, the UUA is not a theological organization, as it does not require its ministers to adopt a specific set of doctrinal or theological beliefs.

31.     The UUA's bylaws specifically state that "No minister shall be required to subscribe to any particular creed, belief, or interpretation of religion…" (§11.1).

32.     Likewise, the UUA's bylaws specifically prohibit any theological requirements for its religious educators, stating, "No religious educator shall be required to subscribe to any particular

creed, belief, or interpretation of religion in order to obtain and hold religious education credentialing status."  (§12.1).

33.     Rather than theological precepts, the UUA's core principles include philosophical and political concepts such as the "search for truth and meaning" and the "right of conscience and the use of the democratic process within our congregations."  (§2.1).

34.     Because there is no requirement to adopt certain theological positions, UUA ministers are entitled to great freedom of thought and speech, with the UUA promoting "Freedom of the Pulpit" as fundamental to its core principle of the "use of the democratic process within our congregations."

35.     The guidelines for the UUA bylaws state: "'The minister(s) shall have freedom of the pulpit as well as freedom to express his or her opinion outside the pulpit.' This is assumed to mean that while members may express their disagreements, the minister cannot be censured for his or her statements." www.uua.org/leaderlab/learning-center/governance/polity/47009.shtml.

36.     The UUA notes that "our Principles call on us to respect a diversity of opinion and the freedom of the pulpit should be a part of our cherished tradition." *Id.*

37.     The UUA even condemns UU congregations for discipline of ministers for their opinions or speech, emphasizing that "Congregations and their members should adhere to a standard of free expression without censure." *Id.*

38.     For decades, these principles of free expression and belief — the core of the UUA's anti-authoritarian roots — were cherished values of Rohde's ministry.  And like other UUA ministers, for decades Rohde expressed her views on political and social issues without fear of retribution or removal from the ministry.

39.     That all changed beginning in 2021, when the UUA began disciplinary proceedings against Rev. Rohde for alleged statements that are clearly protected by its bylaws.

40.     Like many organizations, the UUA is not immune to our modern "cancel culture" where a mob tries to silence or "cancel" an individual for their speech.  "Cancellation" involves targeting an individual for having spoken in an unacceptable manner, and then ostracizing or effectively boycotting that individual.  This mob response has an obvious chilling effect on discourse.

41.     Cancel culture is also in direct conflict with the UUA's core Principles and bylaws, which promote free discussion and debate, and do not require any theological beliefs from UUA ministers or educators.

42.     Cancellations are particularly effective when the mob can pressure an organization like the UUA to join the mob and bypass its own policies and rules to financially and reputationally harm the targeted individual.

43.     In 2019, the UUA initiated its first cancellation of a minister.  The Rev. Todd Eklof published 200 copies of his book, *The Gadfly Papers*, which was critical of "woke incidents" within the UU Churches.  The mob erupted to target Rev. Eklof and pressured the UUA to violate its own policies and procedures.  Within a year, the UUA had stripped Rev. Eklof of his credentials as a minister.

44.     Rev. Rohde joined with many of her colleagues in defending Rev. Eklof's right to freedom of the pulpit and in criticizing the UUA and the Unitarian Universalist Ministers Association ("UUMA") for ignoring their own bylaws, policies, and procedures in stripping Eklof of his credentials.  Rev. Rohde's outspoken defense of Eklof and of the core principles of free speech and opinion, a cornerstone of her decades-long ministry, made her the next target.

45.     In April of 2021, three ministers — the Rev. Sarah Skochko, the Rev. Dr. Cynthia L. Landrum, and the Rev. Amy Petrie Shaw ("Complainants") — all of whom Rohde has never met, filed a joint complaint ("Joint Complaint") against Rohde for alleged ministerial misconduct.

46.     The Joint Complaint, which eventually led to Rohde's termination as a minister, including the retroactive stripping of her retirement stipend, is 74 pages long.  These 74 pages document Rohde's alleged malfeasance on social media, containing photographs of social media interactions between the three Complainants and Rohde.

47.     In their Joint Complaint, the Complainants falsely alleged that Rohde engaged in "defamation" of colleagues, breaking of "confidentiality," and other unspecified "professional conduct" violations.

48.     Despite the Joint Complaint's length, it provides no examples of Rohde's allegedly defamatory statements.  Instead, it provides statements of Rohde's opinions on various issues.

49.     Opinions are, by definition, not defamatory.

50.     But according to the Complainants, because they disagreed with Rohde's opinions, these opinions were somehow "belittling" and "disparaging" and therefore defamatory.

51.     The Joint Complaint also accuses Rohde of "breaking of confidentiality in collegial settings" by sharing her opinions about discussions occurring in a 1200-person Facebook group outside of that Facebook group.  This group was administered by one of the Complainants, who disliked Rohde's opinions.  There was nothing remotely "confidential" about discussions occurring in a 1200-person forum, and no reasonable person would expect any "confidentiality" for opinions they expressed in that forum.

52.     The Joint Complaint fails to allege how the conversations in the 1200-person Facebook group were "confidential."

53.     The Joint Complaint also fails to specify how Rohde's statements violated any UUA policies and procedures.

54.     In fact, the Joint Complaint is so devoid of any actionable claims that any reasonable handling of this complaint by the UUA would have led to its immediate dismissal.

55. The UUA follows MFC policies and procedures in adjudicating complaints of ministerial misconduct.  Had MFC policies and procedures actually been followed, the Joint Complaint would not have survived beyond an initial review.

56. Instead of following MFC policies and procedures, the UUA kowtowed to the woke mob, punishing a retired minister for expressing her opinions, and silencing anyone from expressing those opinions in the future.

57. The UUA weaponized policies meant to protect congregants from sexual abuse and violence, using those policies as a pretext to terminate a retired minister for nothing more than expressing opinions on social media — speech that, until her termination, was clearly protected by UUA core principles.

58. According to UUA's bylaws, complaints of ministerial misconduct are managed by the MFC in conjunction with the Office of Ethics and Safety and the UUA Safe Congregations Team.

59. The Safe Congregations Team states that it is set up to prevent "violence, abuse, harassment, inappropriate behavior, building security, and other threats to safety."

60. Policing the speech of retired ministers is clearly beyond the purview of the Safe Congregations Team, and outside the intended scope of the ministerial misconduct complaint process.

61. Serious complaints of ministerial misconduct result in a Full Fellowship Review by the MFC.

62. The UUA only removes ministers from Fellowship or ministry after a Full Fellowship Review by the MFC.

63. Historically, only complaints of very serious ministerial misconduct for actions involving violence, abuse, sexual harassment, sexual abuse, or other threats to public safety resulted in a Full Fellowship Review.

64. Even in the case of a Full Fellowship Review for very serious misconduct, termination from Fellowship was a rare occurrence, reserved only for extreme cases such as sexual misconduct or criminal activity.

65. Upon information and belief, Todd Eklof and Kate Rohde are the only two UU ministers to be charged with misconduct and stripped of their ministry solely for their expressions of opinion.

66. The Joint Complaint against Rohde for her social media posts was initially sent to the MFC's Executive Committee.

67. Rather than dismissing it, The MFC's Executive Committee notified Rohde of the Joint Complaint in a letter dated April 27, 2021 and referred the matter to its Consultant for Ethics and Safety, the Rev. Karen Hutt, for an initial investigation.

68. Hutt's investigation of the Joint Complaint involved interviews with the three Complainants, their advocate, and Rohde.  Rohde's advocate and witnesses were not interviewed.

69. Hutt agreed to record the interview at Rohde's request.

70. Rohde is hearing disabled, so in addition to providing protections against dishonesty from the investigator, a recording of the interview was important to assist Rohde with her disability.

71. After the interview, Hutt informed Rohde that both the recording of the interview and the transcript were somehow "messed up" and would not be provided to her.

72. Hutt's initial "investigation" did not involve actually reviewing the written evidence submitted with the Joint Complaint.

73.    Her investigation also did not explain what policies Rohde allegedly violated with her social media posts, nor how any of Rohde's statements were "defamatory" or otherwise a violation of the UUA's "standards of professional conduct."

74.    Her investigation failed to identify any specific statements that were at issue in the Joint Complaint, nor did it identify what specific rules, policies, or procedures those statements had allegedly transgressed.

75.    Rather, Hutt's investigation focused exclusively on "the emotional and personal toll of the experiences" on the Complainants and how they "expressed profound sadness, anger and disappointment" at Rohde.

76.    In other words, her investigation did nothing more than summarize the hurt feelings of the Complainants.

77.    Without identifying any policies or statements at issue, Hutt's investigation concluded that the Complainants "experienced harmful behavior and language."  The specific harmful behavior or language was not identified.

78.    The UUA has still failed to specify what behavior or language was allegedly "harmful."

79.    Hutt also failed to identify any specific statements that were "defamatory."

80.    During Hutt's interview of Rohde, Rohde repeatedly requested specific information regarding which statements were at issue and which specific rules, policies, or procedures those statements had allegedly transgressed.  Hutt refused to provide any specifics.

81.    Rather, Hutt condemned Rohde for her repeated inquiries about the statements and policies at issue.

82.    Hutt then used Rohde's attempts to get due process and learn the actual allegations as evidence that Rohde was guilty of "see[ing] no harm being done."

83.     Apparently, Rohde was expected to simply admit she was guilty without even knowing what she had been accused of.

84.     Hutt's report and investigation were devoid of any analysis of the various provisions of the UUMA code of conduct that Rohde had allegedly violated.

85.     Hutt's report and investigation were also devoid of any analysis of the social media posts that allegedly justified the Joint Complaint.

86.     Hutt's report was essentially a summary of the Complainants' statements that their feelings were hurt due to their disagreements with Rohde, and that Rohde's approach to interacting with her colleagues was "outdated."

87.     Despite promises not to discriminate based on age, Hutt found that Rohde had somehow violated unspecified UUA polices due to her older age and her resulting "outdated" approach to interacting with colleagues — whatever that means.

88.     The conclusion to Hutt's "report" refers to the matter to the MFC for "paradoxical considerations," stating:

> "There are also paradoxical considerations that must be explored further by the MFC.  For example, Rev. Rohde self describes as an elderly, retired minister with physical disabilities and PTSD.  She further describes the harm that she experienced as a woman minister for one third of her narrative.  Perhaps one mode of inquiry in the future might include asking Rev. Rohde to reflect on why she alludes to the bad old days as character building exercises when so much harm was done to women.  Are there lessons to be learned form her relationships with colleagues in today's culture of collegiality?"

89.     MFC Rules and Policies state that after an investigation, "written notice" of the findings must be sent to the minister "outlining the reasons for the Fellowship Review."

90.     There were no "findings" in Hutt's report.  Hutt did not perform an investigation. There was no evaluation of evidence, nor any specification of what policies had been violated. Hutt's only findings were that the Complainants felt hurt, and that Rohde's method of interacting with colleagues was "outdated" — in other words, that Rohde was too old.

91.     One of the accusations in the Joint Complaint was that Rohde "defamed" the Complainants. Hutt failed to provide even a single example of a defamatory statement – that is, a false statement purporting to be fact.  Instead, Hutt simply interviewed the Complainants to verify that their feelings were hurt and deemed this subjective hurt to be defamation.

92.     Rohde was provided no opportunity to respond formally to Hutt's inadequate and unreasonable investigation and report.

93.     Rather, even though she is hearing impaired, Rohde was provided only 5 minutes to respond verbally at a hearing with the MFC Executive Committee.

94.     Based on Hutt's "report" — which fails to identify a single policy violated or a single defamatory statement by Rohde — the Executive Committee recommended the harshest of punishments, removal from Fellowship, writing:

> The Executive Committee of the MFC finds that you have committed ministerial misconduct by defaming colleagues, by interfering with the ministries of colleagues and by refusing to be responsive to repeated attempts to call you back into covenant and adhere to our professional standards, as detailed in the complaint filed against you by three ministerial colleagues.
>
> Because you categorically deny the validity of any and all claims made and the existence of any harm or negative impacts stemming from your words or actions, we are unable to find an avenue of reconciliation or meaningful remediation.  Therefore, we will recommend to the full Ministerial Fellowship Committee your removal from Fellowship, which will necessitate a Full Fellowship review be instituted.

95.     Removal from Fellowship strips a minister of their credentials and effectively ends their career.  In Rohde's case, it also involved retroactively stripping her of the retirement stipend she received for her many years of service to the church.

96.     The MFC Executive Committee also failed to specify what statements were defamatory, or even what statements were at issue.  Like Hutt, the MFC Executive Committee also failed to specify what rules, policies or procedures Rohde had allegedly transgressed.

97.     The MFC forwarded its recommendation and the Joint Complaint for a Full Fellowship review.

98.     The Full Fellowship review appointed an investigative team.

99.     MFC Rules and Policies specify that the investigative team must "develop a full and complete record of the facts and circumstances surrounding the complaint and any other relevant information which may be useful to the Committee in its deliberations."

100.    MFC Rules and Policies also provide that "[e]ach individual appointed to be an investigator is expected to maintain neutrality and an open mind throughout the investigation."

101.    MFC Rules and Policies further specify that "The appointed investigators will file a report and all information collected with the Executive Secretary promptly after the conclusion of the investigation.  All notes and other information gathered by the investigators should be transmitted to the Executive Secretary for archiving as soon as possible following the completion of the investigation."

102.    On March 3, 2022, Rohde wrote to the investigative team and requested that prior to her interview, she be provided the specific statements they were investigating and the specific policies or rules these statements allegedly transgressed.

103.    The investigative team refused to provide this information.

104.    Through her counsel, Rohde also requested this information directly from the UUA; through counsel, the UUA refused to provide it.

105.    Rohde also requested that the investigative team, as part of their investigation, interview those she had served, and those she had served with, over her 40 years of ministry.

106.    She emphasized that because the Complainants did not know her, and their allegations related only to social media posts, this should be weighed against the testimony of those she had served faithfully for over 40 years.

107.    Upon information and belief, the investigative team did not interview any witnesses who served in ministry with Rohde.

108.    When the investigative team interviewed Rohde, they did not focus on the allegations in the Joint Complaint, but on the feelings of the Complainants and Rohde's relationship with them.

109.    Rohde has never met the Complainants.  She does not know them, and therefore has no relationship with them.

110.    As in Hutt's investigation, the investigative team did not address the specific allegations or specific statements at issue.

111.    On October 2, 2022, without ever having been provided with the actual statements at issue or the policies she had allegedly violated, Rohde had a hearing with the MFC regarding the Joint Complaint.

112.    Because one of the allegations was that Rohde had "defamed" colleagues, Rohde tried to provide evidence showing her actual statements in the Joint Complaint were not defamatory.

113.    This evidence analyzed each statement of Rohde in the Joint Complaint, and provided evidence that as a matter of law, no statement was defamatory.

114.    The Reverend Sarah Lammert as executive secretary for the MFC rejected the submission of this evidence to the full Committee.

115.    Despite MFC Rules and Policies providing that there would be "a full and complete record of the facts and circumstances surrounding the complaint and any other relevant information which may be useful to the Committee in its deliberations," the Committee declined to review obviously relevant evidence prepared by Rohde regarding the accusations of defamation.

116.    On October 4, 2022, Rev. Sarah Lammert, Executive Secretary for the Ministerial Fellowship Committee, notified Rohde that the Committee had voted to subject her to the harshest possible punishment: removal from Fellowship.

117.    Rohde was stripped of her credentials as a minister.

118.    Despite her retirement, Rohde would still preach or speak on occasion for a stipend to help support herself and her spouse.

119.    Defendants' actions prevented Rohde from accessing the part-time work of preaching.  Prior to November 2022, Rohde received referrals from churches for preaching at weddings and funerals.  She reasonably expected these referrals to continue during her retirement, as there is a shortage of UU clergy to fill positions.

120.    Prior to November of 2022, Rohde also received a retirement pension or stipend of approximately $450 per quarter for retired UU ministers.

121.    Defendant Unitarian Service Pension Society is responsible for providing the retirement stipend for retired UU ministers in consideration for their years of service in UU ministries.

122.    Upon application to the UUA Office of Church Staff Finances to receive payments, the monthly stipend becomes available to all retired UU ministers who have reached the age of 66 and served at least 20 years in Unitarian Universalist ministries.

123.    "The amounts paid out are based on the minister's accumulated years of service when payments begin, and whether the applicant has designated a spouse to continue to receive the gratuities after the minister's death." Unitarian Universalist Retired Ministers and Partners Association, "On Retirement: A Guide for UU Ministers and Partners," *available at* https://uurmapa.org/publications.

124.    Upon her retirement in 2014, Rohde applied for her pension, and elected to receive a smaller stipend that would benefit her husband if he were to survive her after her death.  She declined to select a larger stipend that did not provide a survivor benefit.

125.    Rohde received this approximately $1800 annual stipend until November 2022.

126.    In November of 2022, the UUA retroactively stripped Rohde of her retirement stipend and the USPS stopped payments to Rohde.

127.    Upon information and belief, the UUA instructed the USPS to breach its contractual obligations to Rohde and stop sending her a quarterly stipend.

128.    As if this was not enough, on November 18, 2022, Rev. Sarah Lammert sent a letter to all UUA ministers and churches falsely stating, among other things, that Rohde had committed the tort of defamation.

129.    Lammert's defamatory letter on behalf of the UUA was widely disseminated to all UUA-affiliated Churches, including to the Unitarian Congregation of West Chester in West Chester, Pennsylvania, where Rohde was an emeritus minister.

130.    As an emeritus minister, Rohde would still preach at the Unitarian Congregation of West Chester and other local congregations on occasion and receive compensation for her work.

131.    In retirement, Rohde also supplemented her income by performing weddings and funerals.

132.    Lammert's defamatory letter on behalf of the UUA had the intended effect of "canceling" Rohde from further paid engagements.

133.    Lammert's letter of behalf of Defendant UUA went far beyond the normal notification process for a removal from Fellowship.

134.    Instead of simply notifying the UU churches that retired Rohde had been removed from Fellowship, Lammert and the UUA knowingly or recklessly made false and defamatory statements about Rohde.

135.    These statements had the effect of ensuring that no UU church or organization would allow Rohde to preach for a stipend.

136.    These statements also led to the cancellation of Rohde's retirement stipend.

137.    Lammert and the UUA made these statements in violation of their own policies and procedures at the time, which promised that "All information obtained through the investigation must be held in the strictest confidence."

138.    The defamatory letter states as follows:

> The Ministerial Fellowship Committee Found that the Rev. Dr. Rohde committed ministerial misconduct by defaming colleagues, by interfering with the ministries of colleagues and by refusing to be responsive to repeated attempts to be responsive to repeated attempts to call her back into covenant and to adhere to our professional standards. The Committee's determination was based on extensive documentation, investigations and interviews undertaken in response to the complaint filed against her by three ministerial colleagues. Because the Rev. Dr. Rohde categorically denied the validity of any and all claims made, and the existence of harm or negative impacts stemming from her words or actions, the Ministerial Fellowship Committee was unable to find an avenue for reconciliation or meaningful remediation. Therefore, the MFC voted to remove the Rev. Dr. Rohde from Fellowship.

139.    The statement that Rohde was responsible for "defaming colleagues" is demonstrably false.

140.    Defamation has a specific legal definition that requires no knowledge of UUA moral or theological teachings.

141.    There are no defamatory statements by Rohde in the 74-page Joint Complaint.

142.    Rather, all of the statements alleged to be defamatory are either demonstrably true or are expressions of pure opinion.

143.   Upon information and belief, the MFC failed to ever investigate if the statements of fact made by Rohde in the Joint Complaint were true or false.

144.   Rohde repeatedly asked the UUA and the MFC to specify which statements were allegedly defamatory, but the UUA and MFC refused to provide this information.

145.   Upon information and belief, the UUA and MFC did not investigate the truth or falsehood of any specific statements by Rohde prior to publishing a widespread letter stating that she had committed defamation.

146.   The MFC Committee and investigation also failed to interview witnesses regarding the truth or falsity of the statements that were allegedly defamatory.

147.   Any reasonable investigation by the MFC would, prior to determining that Rohde had committed defamation, have analyzed her factual statements for truth or falsehood. No such reasonable investigation occurred.

148.   The statement that "The Committee's determination was based on extensive documentation, investigations and interviews" is false.  The Committee did not perform a reasonable investigation, let alone an extensive investigation.

149.   Throughout the process, the UUA and MFC Committee failed to provide even one example of an allegedly defamatory statement by Rohde.

150.   Statements of opinion are not defamatory.

151.   Only false statements of fact can be defamatory, but the MFC has not identified any false statements of fact by Rohde.

152.   Despite numerous requests for the MFC and the investigators to provide an example of a defamatory statement in the 74-page Joint Complaint, no such statement has ever been provided, nor can it be provided — because it does not exist.

153.    Rohde requested to submit evidence showing that her statements in the Joint Complaint were not defamatory.  The MFC refused to accept this proffer of evidence.

154.    Lammert's letter on behalf of Defendant UUA also made the defamatory statement that Rohde did not "adhere to our professional standards" and that this failure to adhere to professional standards was supported by "extensive documentation" or "investigations."

155.    Rohde repeatedly requested information on what specific policies or standards she had violated.  This information was never provided.

156.    "Extensive documentation" does not exist regarding Rohde's alleged failure to adhere to the UUA's professional standards.

157.    Lammert's and the UUA's defamatory statements have harmed Rohde's reputation in her community.

158.    Lammert and the UUA knowingly or recklessly made false statements that Rohde "defamed colleagues." These statements harmed Rohde, including outside of the UUA community.

159.    Rohde was forced out of her position as emeritus minister at the Unitarian Congregation of West Chester after they received Lammert's defamatory letter.  Rohde no longer preaches for a stipend at Unitarian Congregation of West Chester or at any other UUA-affiliated Church.

160.    As a retired minister, Rohde received an annual stipend of approximately $1800. This stipend is available to all retired ministers through Defendant USPS, a separate non-profit charitable organization.

161.    Rohde received this stipend from her retirement in 2014 until the UUA and USPS breached their contract with her and terminated her Fellowship.

162.    She stopped receiving the stipend after Defendants disseminated the defamatory letter in November of 2022.

163.    Rohde earned this stipend for her 34 years of service to the UU Church.

164.    Rohde had the option to receive a larger stipend that would end upon her death, or a smaller stipend that would allow her spouse to continue to receive the benefit after her death.

165.    When she retired in 2014, she elected to receive the smaller monthly stipend so that if her spouse survived her, he would continue to receive the benefit after her death.

166.    Rohde relied on the UUA to act according to its policies and proclaimed principles.

167.    Rohde also relied on the UUA to act in good faith and abide by neutral principles of contract law.

168.    Rohde has suffered financial harm and reputational and emotional damages.

169.    Unlike other religions, the UUA proclaims to have no theological or religious test for ministers.  Defendants' breach of contract and defamation of Rohde can be adjudicated according to neutral principles of contract and defamation law and require no court entanglement with ecclesiastical decisions.

## **COUNT 1:**

### **(Defamation – Against Defendant Unitarian Universalist Association and Defendant Lammert)**

170.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

171.    In November of 2022, Defendant Sarah Lammert and Defendant UUA disseminated a letter publishing false statements of fact about Rohde, namely that Rohde "committed ministerial misconduct by defaming colleagues" and that this "determination was based on extensive documentation, investigations and interviews undertaken in response to the complaint filed against her by three ministerial colleagues."

172.    Defendants' statements are demonstrably false.  Rohde never defamed colleagues, nor were any accusations of defamation documented or investigated by Defendants.

173.     Defendants published these false statements about Rohde on November 18, 2022.

174.     Defendants published these statements with knowledge of their falsity, or at the very least, with reckless disregard for their falsity.

175.     Defendants published these statements without privilege or justification.

176.     These statements have damaged Rohde by lowering her reputation in the community and threatening her future ability to preach, speak, or otherwise earn a living.

177.     Rohde's defamation claim is also cognizable as defamation per se.

## COUNT 2:

### (Invasion of Privacy – False Light – Against Defendant Unitarian Universalist Association and Defendant Lammert)

178.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

179.     In publishing the November 18, 2022, letter, Defendants placed Rohde in a false light that would be highly offensive to a reasonable person.

180.     Defendants alleged that Rohde was responsible for "defaming colleagues," which falsely accuses Rohde of violating the law.  Defendants portrayed Rohde as dishonest, unprofessional, and unresponsive, and falsely claimed that these conclusions were supported by "extensive documentation, investigations and interviews."

181.     In fact, Defendant never investigated whether any of Rohde's statements were, in fact, defamatory, and even refused to look at Rohde's evidence to the contrary.

182.     Defendants placed Rohde in a false light by claiming her actions had caused "extensive harm" and that Rohde had refused to take "accountability" for her alleged "misconduct."

183.     Dishonesty, lying, unprofessionalism, a lack of accountability, and unresponsiveness are qualities that are rightly offensive to reasonable people.

184.     Defendants made and published these statements with knowledge of their falsity, or with reckless disregard for their falsity and for the false light in which they would portray Rohde.

185.     These statements have damaged Rohde by lowering her reputation in the community and threatening her future ability to preach, speak, or otherwise earn a living.

## COUNT 3:

**(Breach of Contract – Against Defendant Unitarian Universalist Association)**

186.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

187.     Rohde and the UUA had an existing contract.

188.     Defendant UUA breached its contract with Rohde when it failed to follow its stated policies and procedures and stripped Rohde of her Fellowship with the UUA without due process.

189.     Defendant UUA breached its contract with Rohde when it retroactively stripped her of her past earned retirement benefits.

190.     Rohde's retirement stipend was earned in consideration for her years of service in UU ministry, and the amount was determined based on her total accumulated years of service in UU ministry.

191.     When Rohde made the decision to retire in 2014, she relied on the promise of these benefits for her past 34 years of service to the UUA and UU Churches.

192.     Rohde elected to receive a smaller stipend each month, with survivor benefits for her spouse, rather than receive a larger stipend with no survivor benefits.

193.     Rohde made this election in reliance that Defendant would act in good faith.

194.     As a result of Defendant's breach, Plaintiff has suffered damages.

## COUNT 4:

### (Breach of Contract – Against Defendant Unitarian Service Pension Society)

195.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

196.    Rohde and the Unitarian Service Pension Society had an existing contract.

197.    Rohde's retirement stipend from the USPS was earned in consideration for her years of service in UU ministry, and the amount was determined based on her total accumulated years of service in UU ministry.

198.    Defendant USPS breached its contract with Rohde when it retroactively stripped her of her past earned retirement benefits.

199.    In 2014, Rohde elected to receive a smaller stipend each month, with survivor benefits for her spouse, rather than receive a larger stipend with no survivor benefits.

200.    When Rohde made the decision to retire in 2014, she relied on the promise of these benefits for her past 34 years of service to the UUA and UU Churches.

201.    Rohde made this election in reliance that Defendant would act in good faith.

202.    As a result of Defendant's breach, Rohde has suffered damages.

## COUNT 5:

### (Breach of Contract: Promissory Estoppel – Against Defendants Unitarian Universalist Association and Unitarian Service Pension Society)

203.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

204.    Defendants UUA and USPS made promises to Rohde regarding her retirement stipend.

205.     These promises included that she would receive her retirement stipend in consideration for her past years of service to UU ministries, with an amount calculated based on her number of years of service.

206.     These promises also included that she would receive survivor benefits for her spouse, if she elected to receive a smaller retirement stipend at the time of retirement.

207.     In reliance on these promises, Rohde elected to receive a smaller stipend with retirement benefits for her spouse.

208.     Defendants reasonably expected Rohde would rely on their promises.

209.     As a result of Defendants' breach of their promises, Rohde has suffered damages.

210.     Injustice can be avoided by enforcing the promise to provide Rohde her retirement stipend with survivor benefits.

## **COUNT 6:**

### **(Tortious Interference with Contract: Against Defendants Unitarian Universalist Association and Defendant Lammert)**

211.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

212.     Rohde and the Unitarian Universalist Association of Congregations had an existing contract.

213.     Rohde and the Unitarian Service Pension Society had an existing contract.

214.     Defendants UUA and Lammert knew about the existence of the contracts between Rohde and the UUA and USPS.

215.     Defendants UUA and Lammert intentionally interfered with these contracts, resulting in breach of these contracts.

216.     Rohde suffered damages as a result of Defendants' actions.

<u>**REQUEST FOR RELIEF**</u>

The damages in this case exceed the jurisdictional amount requiring arbitration referral by Local Rule 1301.1. THEREFORE, Plaintiff hereby demands Judgment against Defendant as follows:

1. For damages, including general and special damages, in an amount to be determined at trial;

2. For entry of an order requiring Defendant Unitarian Universalist Association and Defendant Lammert to post a retraction of their false and defamatory statements regarding Plaintiff.

3. For other, further and different relief as the Court may deem just, equitable and proper under the circumstances.

Dated: November 15, 2023

Respectfully submitted,

<u>/s/ Samantha K. Harris</u>
Samantha Harris
ALLEN HARRIS PLLC
P.O. Box 673
Narberth, PA 19072
610-634-8258
sharris@allenharrislaw.com

*2023-09054-TT*

KATHRYN J. ROHDE

_____

Plaintiff

vs.

UNITARIAN UNIVERSALIST
ASSOCIATION, UNITARIAN
SERVICE PENSION
SOCIETY, AND SARAH
LAMMERT

_____

Defendants

Docket # _____

*Filed and*
*PROT...*
*16 Nov 2...*
*M. S...*

IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY

VERIFICATION

I  KATHRYN ROHDE _____, verify that I am the Plaintiff
in the present action and that the facts and statements contained in the above
petition are true and correct to the best of my knowledge, information and/or
belief. I understand that false statements are made subject to the penalties of
18Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated:  _Nov. 9, 2023_

Signature:  _Kathryn J Rohde_

2023-09054-TT