**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **KATHRYN J. ROHDE,**<br>          *Plaintiff,*<br><br>          **v.**<br><br>**UNITARIAN UNIVERSALIST**<br>**ASSOCIATION et al.,**<br>          *Defendants.* | **Civil No. 23-5047** |

**<u>MEMORANDUM</u>**

**Costello, J.**                                                                              **July 11, 2025**

Plaintiff Rev. Kathryn Rohde has sued Defendants Unitarian Universalist Association ("Association"), Unitarian Service Pension Society ("Pension Society"), and Rev. Dr. Sarah Lammert alleging that Defendants mistreated her by stripping her of her ministerial credentials and by notifying the congregation of the reasons for this action. Rev. Rohde has alleged several tort and contract claims against Defendants. Defendants, in turn, have moved to dismiss all of Rev. Rohde's claims. Defendants make two central arguments in support of their motion to dismiss. First, Defendants argue that the Court lacks personal jurisdiction over Defendants. Second, they argue that the ministerial exception—which prevents the Court from interfering with disputes that involve a religious organization's ability to select its ministers or that would require the Court to entangle itself with religious doctrine—bars Rev. Rohde's claims. As is discussed in detail below, the Court finds that it has personal jurisdiction over Defendants. The Court further finds that the ministerial exception bars most of Rev. Rohde's claims. Accordingly, the Court will grant the motion in part and deny it in part and grant Rev. Rohde leave to amend the Complaint.

I.     **BACKGROUND**[1]

Rev. Rohde began serving as a Unitarian Universalist minister in 1980.  ECF No. 1, Ex. A ¶¶ 19, 28 (Complaint).  Rev. Rohde served several congregations for decades before her retirement in 2014.  *Id.* ¶¶ 3–4, 28.  After her retirement, Rev. Rohde continued to "preach or speak" part-time as an emeritus minister at services like weddings and funerals.  *Id.* ¶¶ 18, 118, 130–31.

In April 2021, three other Unitarian Universalist ministers filed a complaint against Rev. Rohde with the Association and claimed that she had committed "ministerial misconduct" based on social media interactions the three ministers had with her.  *Id.* ¶¶ 45–46.  The ministers' complaint alleged that Rev. Rohde "engaged in 'defamation' of colleagues, breaking of 'confidentiality,' and other unspecified 'professional conduct' violations."  *Id.* ¶ 47.  The Association's Ministerial Fellowship Committee ("Committee") investigated the complaint.  *Id.* ¶¶ 58, 67–93.  The Committee's "Executive Committee" determined that Rev. Rohde had committed "ministerial misconduct"[2] and recommended that the full Committee remove her from Fellowship and revoke her ministerial credentials.  *Id.* ¶ 94.  The Committee then appointed an investigative team to develop a record before full Committee review.  *Id.* ¶¶ 94–99.

After a hearing on October 2, 2022, the Committee voted to remove Rev. Rohde from Fellowship and to revoke her ministerial credentials.  *Id.* ¶¶ 111, 116–17.  Rev. Lammert—the

---

[1] The Court accepts Rev. Rohde's factual allegations as true for the purposes of resolving this motion to dismiss.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Specifically, the Executive Committee found that Rev. Rohde had "committed ministerial misconduct by defaming colleagues, by interfering with the ministries of colleagues and by refusing to be responsive to repeated attempts to call [her] back into covenant and adhere to our professional standards, as detailed in the complaint filed against [her] by three ministerial colleagues."  ECF No. 1, Ex. A ¶ 94.

Committee's Executive Secretary—then sent an email on November 18, 2022 to the Association's "ministers and churches" explaining that the Committee found Rev. Rohde "committed ministerial misconduct"[3] and voted to remove her from Fellowship. *Id.* ¶¶ 116, 128–29, 138.

Rev. Rohde claims the Association and Rev. Lammert's actions harmed her reputation, prevented her from earning income by preaching as an emeritus minister, and effectively stripped her of the approximately $1,800.00 per year retirement stipend she received from the Pension Society. *Id.* ¶¶ 157, 159–62. Rev. Rohde brought the following six claims arising from the Committee's decision to remove her ministerial credentials for engaging in ministerial misconduct: (1) a defamation claim against the Association and Rev. Lammert; (2) a false light claim against the Association and Rev. Lammert; (3) a breach of contract claim against the Association; (4) a breach of contract claim against the Pension Society; (5) a promissory estoppel claim against the Association and the Pension Society; and (6) a tortious interference with contract claim against the Association and Rev. Lammert. *See id.*

Defendants moved to dismiss all of Rev. Rohde's claims. ECF No. 15; ECF No. 16. First, Defendants argue that the Court does not have personal jurisdiction over Defendants. ECF No. 15; ECF No. 16 at 16–19. Second, Defendants argue that the First Amendment's "ministerial exception" bars the Court from reviewing Rev. Rohde's claims. ECF No. 15; ECF No. 16 at 7–15.[4] The Court will grant Defendants' motion in part and deny it in part.

_____

[3] Again, the email stated that Rev. Rohde had "committed ministerial misconduct by defaming colleagues, by interfering with the ministries of colleagues and by refusing to be responsive to repeated attempts . . . to call her back into covenant and to adhere to our professional standards . . . ." ECF No. 1, Ex. A ¶ 138.

[4] Defendants also argue that Rev. Rohde has otherwise failed to state claims for relief. ECF No. 15; ECF No. 16 at 20–27. This argument is addressed in footnote 17.

## II.    LEGAL STANDARD – Rule 12(b)(2)

Questions of personal jurisdiction must be resolved before addressing the merits of the pleadings.  *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 229–30 (3d Cir. 2002).  If the Court lacks personal jurisdiction, it can, on motion from a party, dismiss the case.  Fed. R. Civ. P. 12(b)(2).  Once personal jurisdiction is challenged "plaintiff must establish the Court's jurisdiction over the moving defendant through 'affidavits or other competent evidence.'"  *Baird v. Meyers, Roman, Friedberg & Lewis, Co., LPA*, 700 F. Supp. 3d 249, 257 (E.D. Pa. 2023) (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)) (further citation omitted).  Unlike a motion to dismiss for failure to state a claim, motions to dismiss for lack of personal jurisdiction require the court to consider materials outside of the pleadings.  *See id.* (quoting *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990)).  If the Court does not hold an evidentiary hearing[5] "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Baird*, 700 F. Supp. 3d at 257 (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

---

[5] Because Rev. Rohde has established a prima facie case of personal jurisdiction, the Court will not hold an evidentiary hearing.  *See Pinto v. St. Paul Fire & Marine Ins. Co.*, 674 F. Supp. 3d 176, 181–82 (E.D. Pa. 2023) (decision to have evidentiary hearing is in the discretion of the trial court).

### III.    DISCUSSION – Rule 12(b)(2)

Rev. Rohde has established a prima facie case of personal jurisdiction for her breach of contract[6] and intentional tort claims.[7]  This court has jurisdiction over defendants "to the extent provided under Pennsylvania state law." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299 (3d Cir. 2008) (citing *Miller*, 384 F.3d at 96).  "Pennsylvania's long arm statute authorizes personal jurisdiction over entities to the fullest extent permitted under the United States Constitution." *Id.* (citing 42 Pa. Cons. Stat. § 5322(b)).  Personal jurisdiction can either be general or specific. *O'Connor v. Shady Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).  The parties agree that the Court does not have general jurisdiction in this case.  Indeed, no Defendant has had continuous or systematic contacts with Pennsylvania.  *BNSF Ry. v. Tyrell*, 581 U.S. 402, 413 (2017).  Therefore, the Court will address only specific jurisdiction.

Specific jurisdiction is evaluated "on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001)). There are two tests for specific personal jurisdiction: "(1) the 'traditional' test . . . and (2) the [*Calder*] 'effects' test." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (first quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); then quoting *Calder v. Jones*, 465 U.S. 783, 787 & n.6 (1984)).  Courts apply the traditional test to breach of contract actions.  *See,*

---

[6] The Court groups Rev. Rohde's claims of promissory estoppel and breach of contract together for the purposes of the personal jurisdiction analysis.  *See Walsh v. Alarm Sec. Grp., Inc.*, 157 F. Supp. 2d 501, 506 & n.1 (E.D. Pa. 2001) (considering whether court had personal jurisdiction over contract and promissory estoppel claims together).

[7] The Court groups Rev. Rohde's claims of defamation and invasion of privacy – false light together for the purposes of the personal jurisdiction analysis.  *See Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 451–54 (E.D. Pa. 2021) (considering whether court had personal jurisdiction over claims of defamation and invasion of privacy – false light together).

5

*e.g., Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129–30 (3d Cir. 2020)

(using traditional test in a breach of contract action).  Under the traditional test, specific

jurisdiction is established where (1) a defendant has purposefully directed activities to the forum;

(2) the plaintiff's claim relates in some way to these activities; and (3) the defendant has not

shown that there is some compelling reason as to why the exercise of jurisdiction would be

unreasonable.  *Burger King Corp.*, 471 U.S. at 472, 477 (citation omitted).[8]

The first two requirements of the traditional test are known as purposeful availment and

relatedness.  *See O'Connor*, 496 F.3d at 318.  To satisfy the purposeful availment requirement, it

must be shown that the defendant deliberately "target[ed]" the forum.  *Id.* at 317 (citation

omitted).  Relatedness requires a "strong relationship among the defendant, the forum, and the

litigation."  *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (citing *Ford Motor Co. v. Mont.*

*Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021)).  To show relatedness in a contract case "the

defendant's contacts with the forum [must have been] *instrumental* in either the formation of the

contract or its breach."  *Danziger & De Llano, LLP*, 948 F.3d at 130 (emphasis in original).

In intentional tort cases, courts use either the traditional test or the *Calder* "effects" test to

determine whether the court has specific jurisdiction.  *Hasson*, 114 F.4th at 189–90.  Under the

*Calder* effects test, specific jurisdiction exists if plaintiff shows that: (1) defendant committed an

intentional tort; (2) plaintiff felt the brunt of the harm in the forum such that the forum can be

said to be the focal point of the harm suffered by plaintiff; and (3) defendant expressly aimed the

tortious conduct at the forum such that the forum can be said to be the focal point of the tortious

activity.  *Marten*, 499 F.3d at 297 (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66

---

[8] Defendants have not raised any compelling reasons why the exercise of jurisdiction would be unreasonable in this case.  *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 355-56 (E.D. Pa. 2016) (citing *Burger King Corp.*, 471 U.S. at 477).

(3d Cir. 1998)). Only if the "expressly aimed" element is established does the Court need to

consider the other two elements. *Id.* at 297 (citing *IMO Indus., Inc.*, 155 F.3d at 266).

### A.    Breach of Contract Claims

Rev. Rohde is a citizen of Pennsylvania and alleges that she has contracts with both the

Association[9] and the Pension Society.[10] ECF No. 1 ¶ 5(a); ECF No. 1, Ex. A ¶¶ 187, 196–97.

The existence of a contract with a citizen in the forum state alone is not sufficient to establish

specific personal jurisdiction. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008)

(citing *Burger King Corp.*, 471 U.S. at 478). However, "a defendant need not make '[p]hysical

entrance' into the forum state to become subject to its jurisdiction." *Baird*, 700 F. Supp. 3d at

258 (quoting *O'Connor*, 496 F.3d at 318 (quoting *Burger King*, 471 U.S. at 476)). Rather,

"[m]ail and telephone communications [sent by the defendant] into the forum may count toward

the minimum contacts that support jurisdiction." *Id.* (quoting *Grand Ent. Grp., Ltd. v. Star*

*Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993)). Email communications also count so long

as these communications show purposeful availment. *See Toys "R" Us, Inc. v. Step Two, S.A.*,

318 F.3d 446, 455 (3d Cir. 2003). Still, "infrequent or minimal communication" between

---

[9] It appears from the Complaint that the Association and Rev. Rohde had some form of
contractual relationship. The Association credentialed ministers, including Rev. Rohde, by
admitting them into ministerial Fellowship and once admitted only removed ministers for
"unbecoming conduct, incompetence, or other specified cause." ECF No. 1, Ex. A ¶¶ 25-27. In
addition, the Association nominated Rev. Rohde to be a minister at the Unitarian Congregation of
West Chester (the "Congregation") and paid the Congregation a portion of Rev. Rohde's salary
through an "extension ministry program." ECF No. 21-1 ¶ 1.

[10] Rev. Rohde also had a contractual relationship with the Pension Society. Rev. Rohde received
quarterly payments from the Pension Society so long as she remained in Fellowship. ECF No.
16-2 ¶ 7. The Pension Society stopped making payments to Rev. Rohde when she was removed
from Fellowship. *Id.* ¶ 9.

contracting parties is not sufficient to establish specific personal jurisdiction. *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 492 (E.D. Pa. 2021) (further citation omitted).

Here, Rev. Rohde has established a prima facie case of specific personal jurisdiction as to her breach of contract claims against the Association. Rev. Lammert sent several emails to Rev. Rohde on behalf of the Association regarding her disciplinary proceedings. ECF No. 16-1 at 169 (Apr. 27, 2021 email informing of complaint); *Id.* at 173 (Dec. 6, 2021 email regarding full Fellowship review); *Id.* at 186 (May 20, 2022 email arranging videoconference appearance for Oct. 2, 2022 Review proceeding); *Id.* at 188 (Oct. 4, 2022 letter confirming finding at videoconference appearance). These communications were directed to Rev. Rohde in Pennsylvania and were related to Rev. Rohde's purported breaches. In addition, Defendants required Rev. Rohde's attendance at the videoconference during which it was determined that Rev. Rohde's membership in Fellowship would be revoked. ECF No. 16-1 at 186. The Committee effectively reached into Pennsylvania via this virtual meeting. These communications and the videoconference were not "infrequent or minimal." *M3 USA Corp.*, 516 F. Supp. 3d at 492. Rather, these contacts, which occurred over several months, were instrumental with respect to Defendants' alleged breach. *Danziger*, 948 F.3d at 130. Therefore, Rev. Rohde has established a prima facie case of personal jurisdiction as to the Association for her breach of contract claims.

Rev. Rohde has also established a prima facie case of jurisdiction as to her breach of contract claim against the Pension Society. The Pension Society's only contacts with Pennsylvania involved the payments into Pennsylvania to Rev. Rohde. The Pension Society's alleged failure to perform its agreement by ceasing payment to a Pennsylvania resident is a sufficient contact to establish specific jurisdiction. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220

8

(1957) (finding that single life insurance policy, performed over a course of years by policyholder in the forum state and then allegedly breached by insurance company in foreign state created a sufficient contact with the forum); *see also Remick*, 238 F.3d at 257 (payment of contract considered with other contacts can be used as basis for personal jurisdiction). Accordingly, the Court has specific jurisdiction over Rev. Rohde's breach of contract causes of action.

### B.    Intentional Tort Claims

Plaintiff's claims of defamation and invasion of privacy – false light, are intentional torts. *Martin v. City of Reading*, 118 F. Supp. 3d 751, 780 n.24 (E.D. Pa. 2015) (interpreting Pennsylvania law).  Applying the *Calder* effects test, the Court finds that Rev. Rohde has established a prima facie basis for her intentional tort claims.  As an initial matter, the alleged tortious conduct—the dissemination of false information about Rev. Rohde—was expressly aimed at this forum.

First, Defendants' email notifying members of the Association of Rev. Rohde's removal from Fellowship reached 2,950 people, at least 96 of whom were Pennsylvania residents.  ECF No. 16-1 ¶ 33.  Second, Rev. Lammert subsequently met by videoconference with the leadership of Rev. Rohde's Congregation, which was situated in Pennsylvania.  ECF No. 21-1 ¶ 13.  It is reasonable to infer that this meeting involved Rev. Rohde's removal because the leadership of the Congregation intended to schedule a vote to remove Rev. Rohde's title of emeritus minister following the meeting.  *Id.* ¶¶ 13–16.  The specific and targeted nature of the email here, taken together with Rev. Lammert's videoconference with the Congregation, show that Defendants expressly aimed their conduct within Pennsylvania.  *Goldfarb*, 539 F. Supp. 3d at 442, 452–54 (finding that district court had personal jurisdiction over Washington author of

social media posts allegedly defaming Pennsylvania medical school professor because, among

other things, the posts involved the Pennsylvania activities of a Pennsylvania resident and

impugned the professionalism of the plaintiff whose career was centered in Pennsylvania); *see*

*also Gorman v. Shpetrik*, Civ. Action No. 20-4759, 2022 WL 717075, at *2–3 (E.D. Pa. Mar. 10,

2022) (finding conduct was expressly aimed at forum where defendant directed allegedly

defamatory social media post to plaintiff's company located within Pennsylvania accusing

plaintiff, a Pennsylvania resident, of committing sexual assault and being a "child molester").

        In addition, the focal point of the harm occurred in Pennsylvania.  Defendants knew that

Rev. Rohde resided in Pennsylvania and knew of her association with a Pennsylvania

Congregation.  Because the email allegedly attacked Rev. Rohde's professional ability and Rev.

Rohde's ability to work as a minster in Pennsylvania was impacted by Defendants' email, the

focal point of the harm was in Pennsylvania.  *See Remick*, 238 F.3d at 259 (finding the second

element of *Calder* test satisfied where the plaintiff's "professional activities are centered in

Pennsylvania and the allegedly defamatory letters question [the plaintiff's] professional ability").

Given this, Rev. Rohde has satisfied the *Calder* effects test and has established specific personal

jurisdiction for her intentional tort claims.

        Having determined that Rev. Rohde has established personal jurisdiction for her

intentional tort and contract claims, the Court next turns to the discussion of the applicability of

the ministerial exception to those claims.

## IV.     LEGAL STANDARD AND THRESHOLD ISSUES – Rule 12(b)(6)

        Defendants argue that the ministerial exception deprives the Court of subject matter

jurisdiction.  Defendants are incorrect.  Instead, the ministerial exception is an affirmative

defense and can be evaluated under the Rule 12(b)(6) standard.  *Hosanna-Tabor Evangelical*

*Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012) (concluding the ministerial

exception "operates as an affirmative defense to an otherwise cognizable claim, not a

jurisdictional bar").  The Court can dismiss a plaintiff's claim based on the ministerial exception

if it is clear "from the face of the complaint" and the documents "properly considered on a Rule

12(b)(6) motion" that the ministerial exception applies.  *See Simon v. St. Dominic Acad.*, Civ.

Action No. 19-cv-21271, 2021 WL 6137512, at *2 (D.N.J. Dec. 29, 2021) (quotation omitted).

A court can dismiss a plaintiff's complaint under Federal Rule of Civil Procedure

12(b)(6) if the plaintiff "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ.

P. 12(b)(6).  The Court should "accept all factual allegations as true, construe the complaint in

the light most favorable to the plaintiff, and determine whether, under any reasonable reading of

the complaint, the plaintiff may be entitled to relief."  *See Phillips v. Cnty. of Allegheny*, 515 F.3d

224, 233 (3d Cir. 2008) (quotation omitted).  The Court may grant a motion to dismiss if the

plaintiff is not entitled to relief even when the Court accepts her factual allegations as true and

construes the complaint in the light most favorable to her.  *See In re Burlington Coat Factory

Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

When reviewing a Rule 12(b)(6) motion, the Court can only consider "the complaint,

exhibits attached to the complaint, and matters of public record."  *See First Nonprofit Ins. Co. v.

Meenan Oil LLC*, 462 F. Supp. 3d 537, 541 (E.D. Pa. 2020) (quoting *Est. of Roman v. City of

Newark*, 914 F.3d 789, 796 (3d Cir. 2019)).  The Court can also consider "an undisputedly

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document."  *See Pension Benefit Guar. Corp. v. White Consol. Indus.,

Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  A document attached to a motion to dismiss is only

"undisputedly authentic" if "no party questions" the document's authenticity.  *See First Nonprofit*

*Ins. Co.*, 462 F. Supp. 3d at 542 (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)).

Defendants have submitted several exhibits in support of their motion to dismiss.  *See* ECF No. 16-1; ECF No. 16-2.  At this time, the Court cannot consider the "Agreement Concerning Administration of the Service Gratuity Program" that Defendants attached to their motion because Rev. Rohde has disputed the authenticity of the agreement in her opposition brief.  *See* ECF No. 16-1 at 192–207; ECF No. 21 at 25 (discussing the documents Defendants submitted regarding her stipend and claiming she "lacks discovery evidence on documents she signed regarding her stipend and various [Association] policies and procedures in effect at the time of her retirement"); *First Nonprofit Ins. Co.*, 462 F. Supp. 3d at 542 ("Because Plaintiff disputes the authenticity of the [agreement attached to the motion to dismiss], it is not an 'integral document' that the Court may consider").[11]

However, the Court can consider the Association's bylaws and the Committee's rules and policies attached to Defendants' motion to dismiss because Rev. Rohde references and quotes them in her Complaint and does not dispute their authenticity.  *See, e.g.*, ECF No. 1, Ex. A ¶¶ 25–27, 31–33, 99–101 (referencing bylaws and rules and policies); ECF No. 16-1 at 21–53, 68–113 (Association bylaws and Committee rules and policies).  The Court can also consider the November 18, 2022 email because Rev. Rohde references and quotes it in her Complaint and does not dispute its authenticity.  *See, e.g.*, ECF No. 1, Ex. A ¶ 138 (quoting November 18, 2022 email); ECF No. 16-1 at 190 (November 18, 2022 email).  The Court has not considered any of Defendants other attachments in resolving the Rule 12(b)(6) motion.

---

[11] Further, it is not clear to the Court that the attached agreement is the controlling agreement because it is labeled "Draft Number One."  *See* ECF No. 16-1 at 193.

## V.    DISCUSSION – 12(b)(6)

Defendants argue that the Court should dismiss Rev. Rohde's claims under the First Amendment's ministerial exception because each of her claims are "inextricably based on [the Association's] ecclesiastical disciplinary process" and its decision that Rev. Rohde "no longer met its requirements to be a minister in [Association] Fellowship."  ECF No. 16 at 7–8.  The ministerial exception arises under both the First Amendment's Establishment Clause[12] and Free Exercise Clause[13] and applies to judicial actions.  *See Hosanna-Tabor*, 565 U.S. at 184 ("The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own"); *Petruska v. Gannon Univ.*, 462 F.3d 294, 306 (3d Cir. 2006) (noting the First Amendment applies to "both legislative and judicial action").  The ministerial exception prevents courts from "interfering with the decision of a religious group to fire one of its ministers."  *See Hosanna-Tabor*, 565 U.S. at 181.

The Supreme Court has only applied the ministerial exception in the employment discrimination context.  *See Hosanna-Tabor*, 565 U.S. at 196; *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020); *Koenke v. Saint Joseph's Univ.*, Civ. Action No. 19-4731, 2021 WL 75778, at \*4 (E.D. Pa. Jan. 8, 2021) ("[C]ontract-based and tort-based employment claims" are the "types of lawsuits . . . where it remains ambiguous as to whether and to what extent the ministerial exception may apply").  Where the Supreme Court has applied the ministerial exception, its analysis has focused on whether the employee at issue qualified as a

---

[12] The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion . . . ."  U.S. Const. amend. I.

[13] The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise" of religion.  U.S. Const. amend. I.

minister.  *See Hosanna-Tabor*, 565 U.S. at 194 ("Because [the employee] was a minister within the meaning of the exception, the First Amendment requires dismissal of this . . . suit against [the] religious employer").  Courts should consider "all relevant circumstances" to determine whether an employee qualifies as a minister, with a focus on "what an employee does."  *See Our Lady of Guadalupe*, 591 U.S. at 753, 758 (noting the exception should apply to "any 'employee' who leads a religious organization, conducts worship services or important religious ceremonies or rituals, or serves as a messenger or teacher of its faith" (quoting *Hosanna-Tabor*, 565 U.S. at 199 (Alito, J., concurring) (emphasis removed))).

However, the Third Circuit has applied the ministerial exception to both tort and contract claims.  *See Petruska*, 462 F.3d at 309–10 (applying the ministerial exception to tort claims); *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 120 (3d Cir. 2017) (applying the ministerial exception to contract claim).  While courts applying the ministerial exception to tort and contract claims have also addressed whether the plaintiff is a minister, the focus of their analyses is on whether Free Exercise Clause or Establishment Clause principles otherwise bar the claim.  *See Petruska*, 462 F.3d at 299 (finding tort claims were "barred by the ministerial exception insofar as they implicate a church's right to select its minister under the Free Exercise Clause"); *Lee*, 903 F.3d at 120 (noting courts "must be cognizant of the ministerial exception when asked to adjudicate a contract dispute, as a court's resolution of the dispute may involve 'excessive government entanglement with religion,' and thereby offend the Establishment Clause"); *Uzomechina v. Episcopal Diocese of N.J.*, Civ. Action No. 23-2914, 2024 WL 197752, at *3, *8 (D.N.J. Jan. 18, 2024) (stating plaintiff did not dispute that he was a minister before addressing whether ministerial exception otherwise applied to his contract claims based on First Amendment principles); *but see Simon*, 2021 WL 6137512, at *4 (holding plaintiff's claims,

including contract claims, were barred because plaintiff "performed a vital religious duty" at a religious institution).

Therefore, when determining whether the ministerial exception applies, the Court will consider both whether Rev. Rohde was a minister and whether First Amendment principles otherwise bar the Court from considering her claims.  As discussed below, Rev. Rohde's allegations and the Committee's rules and policies show that she served as a minister.  Further, because most of Rev. Rohde's claims revolve around her removal from Fellowship for her failure to comply with church standards for ministers, the Court is otherwise barred from considering these claims under First Amendment principles.

### A.    Rev. Rohde Was a Minister

As an initial matter, Rev. Rohde argues in passing that the Association is not a religious organization and instead is a "philosophical or political organization."  ECF No. 21 at 17–18.  However, the Association's bylaws show that it has a religious mission.  *See* ECF No. 16-1 at 27 § 2.2. (stating the Association has "religious, educational, and humanitarian purposes" and that it is intended to "serve the needs of its member congregations, organize new congregations, extend and strengthen Unitarian Universalist institutions and implement its principles"); *Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 803–04 (9th Cir. 2024) (deciding—as a matter of first impression—that whether an organization is a "religious institution" such that the ministerial exception may apply depends on all relevant circumstances, with a focus on whether the organization has a "religious mission" (citing *Our Lady of Guadalupe*, 591 U.S. at 737–38, 743)).  The Association's clearly stated religious mission establishes that it is a religious organization.

Rev. Rohde's claim that she was not a minister also fails. Rev. Rohde's Complaint and the Committee's rules and policies show that she was indeed a Unitarian Universalist minister. In the Complaint, Rev. Rohde alleges that she became a Unitarian Universalist minister in 1980 and served as a minister in several congregations until her retirement in 2014. ECF No. 1, Ex. A ¶ 28. Rev. Rohde also alleges that she then became an "emeritus minister at the Unitarian Congregation of West Chester" and continued to "preach or speak" part-time, such as at weddings and funerals. *See id.* ¶¶ 18, 118–19; 130–31; *Our Lady of Guadalupe*, 591 U.S. at 751, 754 (noting ministers may "conduct[] worship services or important religious ceremonies" (quotation omitted)). The Committee's rules and bylaws define ministers as "those persons whose work is theologically grounded, whose work expresses Unitarian Universalist values and principles, whose self and contextual understanding are as a professional religious leader, and who has been granted [F]ellowship by the [Committee]." *See* ECF No. 16-1 at 74. Based on this definition, Rev. Rohde's characterization of herself as a minister who, among other things, preached and spoke at religious ceremonies establishes that she served as a professional religious leader. Therefore, Rev. Rohde qualifies as a minister for purposes of the ministerial exception.

### B.    Rev. Rohde's Defamation Claim is Barred

Defamation claims can involve questions regarding the truth of the allegedly defamatory statements. *See* 42 Pa. Cons. Stat. § 8343(a)–(b) (listing burdens of proof for defamation claims and requiring defendant to prove the "truth of the defamatory communication"). Here, Rev. Rohde claims that the statements in the November 18, 2022 email were defamatory, while Defendants assert that they were true. *See* ECF No. 1, Ex. A ¶¶ 170–77; ECF No. 16 at 15 (noting the email notification that Rev. Rohde claims is defamatory is true because it "accurately describes the basis of the [Committee's] determination" to remove her from Fellowship); *Connor*

*v. Archdiocese of Phila.*, 975 A.2d 1084, 1105 (Pa. 2009) (reviewing appellees' statements in brief and noting that "[i]t appears that . . . appellees would assert the affirmative defense that the [statements] were true" if the defamation claim survived).  Therefore, to resolve Rev. Rohde's defamation claim, the Court would have to consider whether the statements at issue were true, which would require the Court to delve into the Association's religious standards for ministers and disciplinary processes.

As noted above, the email in question stated that the Committee voted to remove Rev. Rohde from Fellowship because she "committed ministerial misconduct by defaming colleagues, by interfering with the ministries of colleagues and by refusing to be responsive to repeated attempts to call her back into covenant and to adhere to our professional standards" and because she "denied the validity of any and all claims made, and the existence of harm or negative impacts stemming from her words or actions."  ECF No. 16-1 at 190.  The email also stated that the decision to remove Rev. Rohde from Fellowship was "based on the covenantal requirements that govern ministerial ethics . . . and [her] refusal to acknowledge accountability for her misconduct around those requirements."  *Id.*

The question of whether Rev. Rohde in fact committed ministerial misconduct and violated ministerial ethics would involve the Court in measuring Rev. Rohde's conduct against church doctrine and second-guessing the Association's disciplinary processes for ministers.   The First Amendment prohibits the Court from weighing in on such issues.  *See, e.g.*, *Yaggie v. Ind.-Ky. Synod Evangelical Lutheran Church in Am.*, 860 F. Supp. 1194, 1199 (W.D. Ky. 1994) (granting motion to dismiss and noting "[i]f truth were a defense to the defamation claim, we presumably could face inquiry into . . . the minister's effectiveness . . . . this [is] precisely what the First Amendment prohibits"), *aff'd*, 64 F.3d 664 (6th Cir. 1995); *Warnick v. All Saints*

*Episcopal Church*, No. 11-1539, 2014 WL 11210513, at \*4, \*8–9 (Pa. Ct. Common Pleas Apr.

15, 2014) (granting summary judgment on priest's defamation claim because statements involved

priest's ministry or alleged misconduct and therefore would require the court to consider church

canons and processes to resolve claim), *aff'd*, 116 A.3d 684 (Pa. Super. Ct. 2014).  Accordingly,

the ministerial exception bars Rev. Rohde's defamation claim.

### C.    Rev. Rohde's False Light Claim is Barred

Rev. Rohde's false light claim also focuses on the November 18, 2022 email.  *See* ECF

No. 1, Ex. A ¶ 179.  A claim for false light must be based on false statements or "literally true"

statements that create a false impression.  *See Graboff v. Colleran Firm*, 744 F.3d 128, 136–37

(3d Cir. 2014) (citing *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1189 (Pa. 1988) (en

banc)).  As with Rev. Rohde's defamation claim, her false light claim would require the Court to

consider the Association's reasons for removing Rev. Rohde from Fellowship and whether the

statement that Rev. Rohde committed ministerial misconduct was false or created a false

impression.  Accordingly, the ministerial exception also bars this claim.  *See, e.g.*, *Yaggie*, 860 F.

Supp. at 1199; *Warnick*, 2014 WL 11210513, at \*4, \*8–9.

### D.    Rev. Rohde's Tortious Interference with Contract Claim is Barred

Rev. Rohde claims that the Association and Rev. Lammert intentionally interfered with

her contracts with the Association and the Pension Society.  ECF No. 1, Ex. A ¶¶ 212–13, 215.

Rev. Rohde does not specify how they interfered with her contracts, but the Complaint seems to

suggest that they interfered by either removing her from ministerial Fellowship or by sending the

November 18, 2022 email.  *See id.* at ¶ 215.  Resolving this claim would require the Court to

determine the Association's intent in revoking her ministerial credentials and notifying its

ministers and churches of her removal.[14]  Doing so would impermissibly involve the Court in the

Association's finding of ministerial misconduct, as well as Church doctrine and disciplinary

processes.  *See Lee*, 903 F.3d at 121 (citations omitted) (finding ministerial exception bars breach

of contract claim because deciding claim would require the court to consider whether pastor

"fail[ed] in spiritual stewardship," which would "impermissibly entangle the court in religious

governance and doctrine prohibited by the Establishment Clause").  Therefore, the ministerial

exception also bars this claim.

> **E.    Rev. Rohde's Breach of Contract Claim Against the Association is Barred in Part**

Rev. Rohde claims that the Association breached a contract with her by "fail[ing] to

follow its stated policies and procedures," "stripp[ing] [her] of her Fellowship with [the

Association] without due process," and "retroactively stripp[ing] her of her past earned

retirement benefits."  ECF No. 1, Ex. A ¶¶ 188–89.  The ministerial exception bars this claim to

the extent it is based on the Association's alleged failure to follow its policies and its decision to

remove Rev. Rohde's ministerial credentials.  As with Rev. Rohde's other claims, deciding this

claim would require the Court to impermissibly insert itself into the Association's standards for

ministers, its reasons for removing her, and its processes for doing so.  *See Lee*, 903 F.3d at 121;

*Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.*,

684 F.3d 413, 420 (3d Cir. 2012) ("Review of a church's compliance with its own rules and

---

[14] One of the elements that a plaintiff must prove to prevail on a tortious interference with
contract claim is that the defendant "specifically intended to harm" the contractual relationship.
*See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (providing
the following four elements for tortious interference with existing contractual relations claims
under Pennsylvania law: (1) "the existence of a contractual . . . relationship between the plaintiff
and a third party;" (2) "purposeful action by the defendant, specifically intended to harm an
existing relationship . . .;" (3) "the absence of privilege or justification on the part of the
defendant;" and (4) "legal damage to the plaintiff as a result of the defendant's conduct").

regulations in arriving at a decision . . . 'would undermine the general rule that religious

controversies are not the proper subject of civil court inquiry' . . . . We could not evaluate

whether [plaintiff] was entitled to an accusation and trial or whether his termination was

'necessary for the good of the Church' without delving into church teachings and making value

judgments about what, in fact, is necessary for the good of the Church." (quoting *Serbian E.*

*Orthodox Diocese for the U.S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 713 (1976))).

However, to the extent Rev. Rohde's breach of contract claim is based on her loss of

"retirement benefits," her claim survives.[15]  Rev. Rohde does not allege that her ability to receive

retirement benefits under the contract required her to remain in Fellowship after her retirement.

*See* ECF No. 1, Ex. A ¶¶ 7–8, 160–67, 189–92 ("[Rev.] Rohde earned this stipend for her 34

years of service to the [Unitarian Universalist] Church").  The Association's bylaws and the

Committee's rules and policies also do not suggest that her benefits were dependent on her

remaining in Fellowship.  *See* ECF No. 16-1 at 39 (showing the Association's bylaws state that

the "Association shall establish and maintain a pension system for ministers in fellowship with

the Association" without specifying whether retired ministers must remain in Fellowship to

continue receiving benefits); ECF No. 16-1 at 69–113.  Based on Rev. Rohde's allegations and

the documents the Court can consider at this stage, it appears that resolution of this claim would

not involve the Court in analyzing doctrine or impacting the Association's ability to choose its

ministers.  Therefore, the Court will deny the motion to dismiss the breach of contract claim

based on the loss of retirement benefits.

---

[15] A plaintiff must prove the following three elements to prevail on a breach of contract claim under Pennsylvania law: (1) "the existence of a contract, including its essential terms[;]" (2) "a breach of a duty imposed by the contract[;]" and (3) "resultant damages."  *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

F.    **Rev. Rohde's Breach of Contract and Promissory Estoppel Claims Against the Pension Society are Not Barred**

Rev. Rohde claims that the Pension Society breached its contract with her by "retroactively stripp[ing] her of her past earned retirement benefits" and that she relied on the Pension Society and the Association's promises to give her a "retirement stipend in consideration of her past years of service to [Unitarian Universalist] ministries."  ECF No. 1, Ex. A ¶¶ 198, 205–08.  As noted above, based on the Complaint and the documents the Court can consider at this stage, the Court can resolve both Rev. Rohde's breach of contract claim and promissory estoppel claim without analyzing doctrine or impacting the Association's ability to choose its ministers.[16]  Rev. Rohde does not allege—and the Association's bylaws and the Committee's rules and policies do not show—that she was required to remain in Fellowship after retiring to continue receiving her "past earned" benefits.  *Id.* at ¶¶ 7–8, 160–67, 197–200, 204–207; ECF No. 16-1 at 39; ECF No. 16-1 at 69–113.  Therefore, the ministerial exception does not bar Rev. Rohde's breach of contract or promissory estoppel claims against the Pension Society at this stage.[17]

---

[16] A plaintiff must prove the following three elements to prevail on a promissory estoppel claim under Pennsylvania law: (1) "the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee;" (2) "the promisee actually took action or refrained from taking action in reliance on the promise;" and (3) "injustice can be avoided only by enforcing the promise."  *See Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003) (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (2000)).

[17] Only Rev. Rohde's breach of contract claim related to retirement benefits against the Association, breach of contract claim against the Pension Society, and promissory estoppel claims are not barred by the ministerial exception.  Defendants also argue that these claims, which are "based on the revocation of [Rev. Rohde's Pension Society] service gratuity," should be dismissed because a service gratuity "by definition precludes any finding that a contract, enforceable promise or reasonable reliance existed."  ECF No. 16 at 27.  However, taking the Complaint as a whole and accepting Rev. Rohde's factual allegations as true, Rev. Rohde has alleged sufficient facts to survive a motion to dismiss.  ECF No. 1, Ex. A ¶¶ 120–27, 160–67, 189–210.

IV.      **CONCLUSION**

The Court will dismiss Rev. Rohde's defamation, false light, and tortious interference with contract claims without prejudice.  The Court will also dismiss without prejudice the portions of Rev. Rohde's breach of contract claim against the Association relating to its decision to remove Rev. Rohde from Fellowship and its alleged failures to follow procedures.  The Court will deny Defendants' motion to dismiss the portion of Rev. Rohde's breach of contract claim against the Association relating to her retirement benefits, her breach of contract claim against the Pension Society, and her promissory estoppel claim.

An appropriate order follows.

**BY THE COURT:**

MARY KAY COSTELLO, J.